UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

STEPHANIE VARUSO BLANKENSHIP                    CIVIL ACTION

VERSUS                                          NO. 08-4479

STATE FARM MUTUAL AUTOMOBILE                    SECTION "N" (1)
INSURANCE COMPANY,

## ORDER AND REASONS

Before the Court are the following two cross motions for summary judgment: (1) the Motion

for Summary Judgment (Rec. Doc. 41), filed by Plaintiff Stephanie Varuso Blankenship

("Blankenship"); and (2) the Motion for Summary Judgment (Rec. Doc. 42), filed by Defendant

State Farm U.S. Employees' Group Accidental Death and Dismemberment Plan ("the Plan" or

"Defendant") (improperly named by Plaintiff as State Farm Insurance Company's Voluntary

Accidental Death and Dismemberment Plan). Both of these motions were opposed. After

considering the memoranda filed by the parties, the exhibits attached thereto, and the applicable law,

the Court rules as set forth herein.

## I.    BACKGROUND

The cross-motions for summary judgment presently before the Court concern Defendant's

denial of Plaintiff's claim for an award of death benefits following the death of Plaintiff's husband,

Scott Randall Blankenship ("Mr. Blankenship"). The facts material to these motions are not disputed.

Plaintiff was an employee of State Farm, had enrolled in State Farm's Group Accidental Death and Dismemberment Plan, and had taken out $320,000 in coverage under the Plan on her husband, Mr. Blankenship. (Rec. Doc. 1, ¶VI). The Summary Plan Description provides that the Plan Administrator is State Farm's Welfare Benefit Administrative Committee. (Exhibit A-1 to Rec. Doc. 42). The Summary Plan Description provides that the Plan Administrator and State Farm Mutual Automobile Insurance Company have "the joint power . . . to make all determinations that the Master Policy requires for its administration, and to construe and interpret the Master Policy whenever necessary to carry out its intent and purpose and to facilitate its administration." (Exhibit A-1 to Rec. Doc. 42, p. 30). Pertinent to this matter, the Plan excludes coverage for losses that result from "[t]he voluntary, not to include purely accidental or unintentional, taking of a drug or drug-containing substance, unless taken as prescribed by a physician." (Exhibit A-1 to Rec. Doc. 42, p. 21).

On July 13, 2007, Mr. Blankenship died of a drug overdose. (Exhibit C to Rec. Doc. 41, p. 11 of 11). On August 31, 2007, Plaintiff requested benefits under the Plan. (Red. Doc. 1, ¶VIII). On July 15, 2008, Defendant denied Plaintiff's claim for benefits, stating as follows:

> Our information shows the cause of death to be pulmonary edema, congestion and atelectasis due to (or as a consequence of) respiratory impairment due to (or as a consequence of) methadone intoxication. The policy does not cover loss resulting from the voluntary, not to include purely accidental or unintentional, taking of a drug or drug-containing substance, unless taken as prescribed by a physician. We have been unable to locate a physician who prescribed Methadone to Scott nor were we able to establish that the Methadone was taken in a purely accidental or unintentional manner.

(Exhibit F to Rec. Doc. 41, p. 1 of 4). The letter further instructed that State Farm "would be

willing to give consideration to any additional information you may wish to submit . . . including the name of any physician who prescribed Methadone for Scott." *Id.* However, Plaintiff admits that she never submitted any additional information for consideration. (Exhibit A to Rec. Doc. 42, p. 106).

On August 4, 2008, Plaintiff requested a review of the decision. (Exhibit B-1 to Rec. Doc. 42, p. 62). On September 3, 2008, the State Farm Appeal Committee notified Plaintiff that it had reviewed the decision and agreed with the determination to deny benefits, as "[i]t does not appear Methadone was prescribed for Mr. Blankenship by a physician, nor does it appear the Methadone he ingested prior to his death was done so in a purely accidental or unintentional matter." (Exhibit B-1 to Rec. Doc. 42, pp. 57-58).

## II.    LAW AND ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the

nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## A. The Parties' Arguments

While Plaintiff admits that Mr. Blankenship died after taking methadone, Plaintiff contends that Defendant improperly denied the claim for death benefits, citing a Policy exclusion, without due inquiry and without making any independent investigation of the circumstances surrounding Mr. Blankenship's death. Indeed, Plaintiff asserts that Defendant has failed to prove that Mr. Blankenship committed suicide, and it has failed to prove that Mr. Blankenship did not take the methadone "as prescribed by a physician," as required under its own exclusion. Defendant, on the other hand, argues that there is significantly more than substantial evidence that Mr. Blankenship's death was the result of the ingestion of methadone, which he had taken without a prescription. Defendant avers that there is no evidence that any health-care professional prescribed the methadone that was found in Mr. Blankenship's system. Instead, Defendant contends that the contents of the administrative record support the Plan

Administrator's finding that Mr. Blankenship, who had struggled with an addiction to prescription painkillers, relapsed into drug use, just a few months after completing rehabilitation and just as his divorce was being finalized.

## B.    Analysis

There is no dispute that Plaintiff's claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. The Court reviews summary judgments in ERISA cases *de novo. Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). Because, here, it is undisputed that the Plan Administrator had the authority to interpret the Plan and to determine whether the claimants qualified for benefits, (Exhibit A-1 to Rec. Doc. 42, p. 30), the Plan's decision is reviewed under an abuse of discretion standard. See *White v. St. Luke's Episcopal Health Sys.*, No. 08-20198, 2009 WL 382131 (5th Cir. Feb. 16, 2009) (unpublished) (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir.1992)).   A two-step process is applied when conducting this abuse of discretion review. *Crowell*, 541 F.3d at 312. First, the Court must determine whether the Defendant's decision to deny death benefits was legally correct. *Id.* If so, the inquiry ends and there is no abuse of discretion. *Id.* Alternatively, *if and only if* the Court finds that Defendant's interpretation was legally incorrect, the Court must then determine whether Defendant's decision was an abuse of discretion. *Id.*; *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir.2001). Only upon reaching this second step must the court weigh as a factor whether Defendant operated under a conflict of interest. See *White*, slip op. at 1-2; *Crowell*, 541 F.3d at 312.

### (1)    Was Defendant's decision to deny benefits legally correct?

Three factors are considered when deciding whether an interpretation is legally correct:

"(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009) (quoting *Crowell*, 541 F.3d at 312). The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan. *Id.* at 313.

First, the Court finds that the Plan is interpreted uniformly by Defendant. According to Nancy Boden, a Senior Analyst at State Farm, it is the common practice of Defendant to interpret the phrase "as prescribed by a physician" to mean that a physician must have prescribed the drug at issue. (Exhibit A to Rec. Doc. 52). Second, the Court concludes that this interpretation is consistent with a fair reading of the Plan. As noted herein, the Policy excludes a "voluntary, not to include purely accidental or unintentional, taking of a drug or drug-containing substance, unless ***taken as prescribed by a physician***." (Exhibit A-1 to Rec. Doc. 42, p. 21, *emphasis added*).  While Plaintiff asserts that one reasonable interpretation of the Policy would require a prescription (as asserted by Defendant herein), Plaintiff contends that another reasonable interpretation is that the Policy does not require the drug to be actually prescribed, and therefore for the decedent to have produced a prescription for it, rather that the methadone be of a *prescribable* amount, such that  "as prescribed by a physician" may be taken to mean "in the manner as would be prescribed by a physician." This Court agrees with Defendant that there is no requirement that Defendant's interpretation be the *only* reasonable interpretation—only that it is consistent with a fair reading of the Plan.  Here, Defendant's interpretation certainly seems to be consistent with a fair reading of the Plan.

Last, as pointed out by Defendant, the number of claims under the Plan is relatively small, when compared to State Farm's other lines of insurance. (Exhibit B to Rec. Doc. 52). Indeed, State Farm has denied only six claims in the past two years. (Exhibit A to Rec. Doc. 52). Taking this information into account, neither Plaintiff's nor Defendant's interpretation of the Plan would result in a significant cost shift. Thus, there seem to be no such unanticipated costs resulting from different Plan interpretations.

Because all three of these elements are satisfied, this Court finds that Defendant's determination was legally correct. While there is no need to determine whether Defendant abused its discretion[1], this Court will nonetheless continue in its analysis in the event that Defendant's determination was not legally correct.

### (2) Was Defendant's decision an abuse of discretion?

The Fifth Circuit has explained:

> A plan administrator abuses its discretion where the decision is not "'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir.2002) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir.1999) (en banc)). We reach a finding of abuse of discretion only where "the plan administrator acted arbitrarily or capriciously." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir.1999). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quotation marks omitted). Our "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir.2007) (quotation marks omitted).

---

[1] Because this Court has determined that the Defendant's decision was legally correct, the undersigned need not consider whether there was a conflict of interest or an abuse of discretion. See *Stone*, 570 F.3d at 258.

If the administrator has a conflict of interest, "we weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning we take account of several different considerations of which conflict of interest is one." *Crowell*, 541 F.3d at 312 (quotation marks and footnotes omitted) (quoting *Glenn*, 128 S.Ct. at 2350-51); see also *White v. St. Luke's Episcopal Health Sys.*, 317 Fed.Appx. 390, 392 (5th Cir.2009) ("[A] 'conflict of interest' ... should 'be weighed as a factor' in determining whether an abuse of discretion occurred."). In addressing how such a conflict must be accounted for under an abuse of discretion review, the Supreme Court in *Glenn* eschewed "special burden-of- proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." 128 S.Ct. at 2351. In particular, the Court held that weighing a conflict as a factor in the abuse of discretion analysis does not "impl[y] a change in the standard of review, say, from deferential to de novo review." *Id.* at 2350. Quite simply, "conflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 2351.

*Holland v. International Paper Co.*, 576 F.3d 240, 246-48 (5th Cir. 2009).

Here, it is undisputed that the Plan Administrator had the authority to interpret the Plan and to determine whether claimants qualified for benefits. (Exhibit A-1 to Rec. Doc. 42, p. 30). Essentially, Defendant is responsible for determining whether Plaintiff is entitled to death benefits and, if so, for paying those benefits. Thus, as the Fifth Circuit instructs, this conflict is but one factor among many that a the undersigned must take into account in reaching a determination of the issue presented here.

After reviewing the memoranda of the parties and the exhibits attached thereto, this Court concludes that State Farm did not act arbitrarily and capriciously in denying Plaintiff's claim for death benefits. The administrative record, which includes hundreds of pages of records from doctors and treatment centers, as well as a Sheriff's report, a coroner's report, and a toxicology report, supports the Plan Administrator's finding that Mr. Blankenship, who had struggled with an addiction to prescription painkillers, relapsed into drug use just as his divorce was being

finalized.

According to the St. Charles Parish Incident Report, deputies were summoned to the scene in response to a call by John Donnaud ("Donnaud"), a friend of Mr. Blankenship, with whom Mr. Blankenship was living while separated from Plaintiff. (Exhibit C to Rec. Doc. 41). Donnaud told deputies that he met Mr. Blankenship at work at 1:30 a.m. that morning. *Id.* According to Donnaud, Mr. Blankenship was staggering and could barely keep his eyes open. *Id.* Donnaud explained that Mr. Blankenship had completed a drug-rehabilitation program five months earlier and had been doing well. *Id.* Donnaud added that Mr. Blankenship had been "having a hard time coping" with a separation and divorce, which had just been finalized that very day. *Id.* Donnaud explained that he and Mr. Blankenship arrived at Donnaud's house at 4:30 a.m., at which point Mr. Blankenship staggered to his bedroom to retire. *Id.* The next afternoon, Donnaud attempted to wake Blankenship for work and found that he was not breathing. *Id.*

Upon arrival on the scene, the officer observed that Mr. Blankenship was "lying face down on the bed, his body was cold to the touch, and there was a pool of partially dried vomit on the bed covering, which surrounded Mr. Blankenship's head and upper torso." *Id.* The Incident Report also states that the officer observed "a white substance on the bed, which had apparently been vomited from Mr. Blankenship's mouth." *Id.* In addition, sheriff's deputies also found two pills under Mr. Blankenship's torso, later identified as Lortab, which, according to the sheriff's report, contained 10 milligrams of hydrocodone. *Id.*

"[P]ulmonary edema, congestion and atelectasis due to (or as a consequence of) respiratory impairment due to (or as a consequence of) methadone intoxication" is the cause of

death listed on Mr. Blankenship's death certificate (Exhibit C to Rec. Doc. 41, p. 11 of 11). The coroner's report indicated a diagnosis of "recent intake of drugs." (Exhibit C to Rec. Doc. 41, p. 8 of 11). The coroner requested that a toxicology report be performed by the St. Louis University Toxicology Laboratory. (Exhibit C to Rec. Doc. 41, p. 10 of 11). That report indicates that Mr. Blankenship's blood tested positive for methadone use. Exhibit C to Rec. Doc. 41, p. 10 of 11). That test also indicated that Mr. Blankenship's blood tested negative for EDDP, a metabolite for methadone. *Id.*

Defendant's claim examiner interviewed Dr. Christopher Long, who performed the toxicology test. (Exhibit B-1 to Rec. Doc. 42, p. 526). Dr. Long advised that the results of his report showed methadone presence at 0.53 mg/ml. *Id.* He explained that for a "naive non user," the toxic level could be between 0.2 to 0.4 mg/ml, but if the person already took methadone, 0.4 mg/ml "would be a beginning basis for toxicity." *Id.* Dr. Long concluded, "the results show he took more than he was supposed to take." *Id.*

Further, Dr. Michael Cochran, a State Farm medical director, who analyzed Mr. Blankenship's medical records and toxicology reports stated that "the methadone level was high and most likely the result of an unusually high dose." Dr. Cochran noted that "there appeared to be NO other medical conditions which may have contributed to the claimant's death." (Exhibit B-1 to Rec. Doc. 42, p. 90). Dr. Cochran also noted that the absence of EDDP, the methadone metabolite, indicated that Mr. Blankenship did not use methadone chronically and that "[t]he combination of high methadone and negative EDDP suggests a recent high dose and not chronic use."[2] *Id.*

---

[2]    Plaintiff accuses Dr. Cochran, the in house medical doctor for State Farm, of "parroting his company's position". (See Rec. Doc. 54, p. 13). However, the Court notes that his conclusion is consistent

While it is undisputed that methadone use caused Mr. Blankenship's death, State Farm's investigation (which also included Plaintiff's best efforts) could uncover no prescription by any doctor or health-care professional for methadone. Indeed, Defendant's Life Claims Examiner, Stacey Lamp ("Lamp"), contacted Caremark, the prescription drug vendor for Plaintiff's and Mr. Blankenship's group health plan. The plan had processed *no* medications in 2007 for Mr. Blankenship. (Exhibit B-1 to Rec. Doc. 42, p. 83). In further investigation, Lamp contacted every physician whose name Plaintiff provided, but was unable to locate a physician or health-care provider who had issued prescription for methodone. (Exhibit B-1 to Rec. Doc. 42, p. 273).[3] Lamp also contacted Mr. Blankenship's brother who told her that he retrieved all of Mr. Blankenship's personal effects from Donnaud's house after his death but found no medication bottles and could provide no information on physicians who may have treated Mr. Blankenship. (Exhibit B-1 to Rec. Doc. 42, p. 309).

On April 9, 2008, after Lamp's attempts to find a prescription for the methadone had been unsuccessful, she urged Plaintiff to contact her if she had any additional information. (Exhibit B-1 to Rec. Doc. 42, p.273). One month later, Plaintiff responded with a letter attaching

---

with that of Dr. Long's, who was not affiliated with State Farm in any way.

[3]     While Plaintiff takes issue with the fact that *she* had to provide the names of physicians to Defendant, she admits that since Mr. Blankenship had been on her health insurance from 1991 to 2007, and she was the person who received the explanation of benefits, which detailed his medical treatment. (Exhibit A to Rec. Doc. 42, pp. 15-16). Therefore, it is reasonable for Defendant to have looked to her to provide such information. Furthermore, the Court concludes that, in looking to Plaintiff to provide it with certain applicable information, Defendant did not "abdicate" its duties to make a reasonable inquiry to Plaintiff, as argued by Plaintiff in Rec. Doc. 54. While Plaintiff complains that Defendant failed to hire a private investigator to personally interview the people involved with the diagnosis of Mr. Blankenship's death, or those Mr. Blankenship may have contacted in the weeks leading up to his death, the administrative record contains ample evidence to show that Defendant, through Lamp, conducted a reasonable inquiry/proper investigation. Further, Plaintiff has pointed the Court to no jurisprudence which requires the hiring of a private investigator in this instance.

medical records from one of Mr. Blankenship's health-care providers, Omni Pain Management. These records were from 2005 and 2006 and contained no record of methadone use, as admitted by Plaintiff in her e-mail to Lamp. (Exhibit B-1 to Rec. Doc. 42, p. 274). Plaintiff stated, "I believe that you are now in possession of all the information necessary to make a decision on my claim for benefits."(Exhibit B-1 to Rec. Doc. 42, p. 93). Plaintiff did not provide Lamp with any additional information or suggestions as to where Mr. Blankenship may have obtained a methadone prescription.[4] (Exhibit A to Rec. Doc. 42, p.106).

Based on the evidence before the Court, including the contents of the administrative record, this Court finds that Defendant did not act arbitrarily and capriciously in determining that Mr. Blankenship used methadone without a prescription. Substantial evidence supports Defendant's decision to deny death benefits based on the exclusion in the policy for death caused by drugs not taken as prescribed by a physician.[5] Ample evidence leads to the conclusion that Mr. Blankenship, a recovering drug addict, took methadone without a prescription, which

---

[4] While in her memoranda, Plaintiff focuses on the fact that Defendant has not proved that Mr. Blankenship did *not* have a prescription for methodone, the Court finds that the evidence in the administrative record suggests that one does not exist. Indeed, it would be nearly impossible for Defendant to conclusively prove that such a prescription does *not* exist. However, such is not Defendant's burden. The burden is on Plaintiff to show that Defendant acted arbitrarily and capriciously in denial of the claim. Plaintiff has failed to do so here.

[5] The Court finds that Plaintiff's argument that methadone ingestion was not the primary cause of death of Mr. Blankenship to be without merit. Indeed, Plaintiff contends that Mr. Blankenship's methodone ingestion was only a tertiary cause of his death. However, this argument contradicts the death certificate, which lists Mr. Blankenship's cause of death as "pulmonary edema, congestion and atelectasis due to (or as a consequence of) respiratory impairment due to (or as a consequence of) methadone intoxication." (Exhibit C to Rec. Doc. 41, p. 11 of 11). The death certification indicates that Mr. Blankenship's methodone ingestion began a chain reaction, which led to respiratory impairment and, finally, pulmonary edema, congestion, and atelectasis.

resulted in his death.[6]  Thus, Plaintiff cannot meet the burden of showing that Defendant abused

its discretion in administering the Plan.

The Court reaches this conclusion even when factoring in that Defendant has a conflict of

interest in that it is responsible for determining whether Plaintiff is entitled to death benefits and,

if so, for paying those benefits.  Even when considering this factor, however, there is ample

evidence (cited above) to suggest that no abuse of discretion on the part of the Defendant

occurred.

## III.  CONCLUSION

Considering the foregoing, **IT IS ORDERED** that **the Motion for Summary Judgment**

**(Rec. Doc. 41)**, filed by Plaintiff Stephanie Varuso Blankenship is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc.**

**42)**, filed by Defendant State Farm U.S. Employees' Group Accidental Death and

Dismemberment Plan is **GRANTED**.

New Orleans, Louisiana, this 14th day of April 2010.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**

---

[6]        Notably, despite having had a chance to appeal and to file this suit, Plaintiff *still* has not put
forward any evidence that contradicts Defendant's determination that Mr. Blankenship did not obtain the
methadone from a health-care professional.